The next case this morning is number 521 0448 people versus Jones arguing for the appellant. Patrick Jones is Craig Hanson arguing for the athlete. People of the state of Illinois is Ivan Taylor. Each side will have 10 minutes for the argument. The appellant will also have five minutes for rebuttal. Please. Not only the clerk is permitted to record these proceedings today. Morning, Council. How are you? Good morning. Okay. Please. The court opposing council. My name is Craig Hanson from the office of the state appellate defender, and I represent the appellant. Mr Patrick Jones. Mr Jones was convicted of burglary after a stipulated bench trial and was sentenced to three years in the Department of Corrections, followed by two years of mandatory supervised release. Despite his demand for a speedy trial, the state agrees that Mr Jones was held in continuous custody for more than 160 days before he was brought to trial, far in excess of the 120 days required by the Speedy Trial Act. Furthermore, the facts of this case demonstrate that none of the exemptions or exclusions provided in the act to told the speedy trial statutory speedy trial period apply to Mr Jones. Rather, the delay in bringing Mr Jones to trial was due to the Illinois Supreme Court's orders regarding the COVID-19 pandemic. The Supreme Court's orders explicitly authorized the court to told the statutory speedy trial period. In doing so, the Supreme Court held that the health and safety of all court users outweigh the best interests of the public and defendants in a speedy trial. As such, the Supreme Court effectively suspended the protections afforded to Mr Jones by the Speedy Trial Act. Mr Jones raises two issues with respect to his statutory speedy trial when, despite demanding a speedy trial, he was held in continuous custody for more than 120 days. Second, that the court's general administrative and supervisory authority does not empower the court to suspend the statutory right to a speedy trial. Since the four months... Aren't you in effect asking this court, an appellate court, to overrule a superior court, the Supreme Court? They're the ones who passed the rule. Uh, how are you asking us to tell the Supreme Court you messed up? Uh, if I may, Your Honor, I'd like to address that. Another question, wouldn't it maybe have been better instead of us deciding this petition under 316 to go certified directly to the Supreme Court? Well, unlike the Supreme Court's decisions and procedural rules, it's unclear whether its administrative orders carry the same binding and precedential effect, particularly where those orders do not comport with the valid legislative enactment or they impinge on a defendant's constitutional or statutory rights. Where Mr. Jones... Were Mr. Jones to concede that this court lacks the authority to issue a decision on the Supreme Court's administrative orders, he would foreclose the only avenue for seeking review of the Illinois Supreme Court's actions, which denied him a right to a appeal is, in fact, the constitutionality of the Supreme Court's orders. And in order to preserve that issue, we have an obligation to raise it here in this court. I have one question. What day was the trial? I thought it was 160 or something like that. 163? It was, uh, the... It was 162 or 163, depending on how the calculations go. I believe the state conceded to 163. It's 160... 162 or 163. Okay, thank you. Yes, Your Honor. Vaughn, was your question answered properly? Yes. How about you, Justice Vaughn? Yes. Thank you. Go right ahead. Thank you. Article 6, Section 16 of the Illinois Constitution vests our Supreme Court with a general administrative and supervisory authority over the courts. However, that authority in no way empowers the court to disregard a valid enactment, a legislative enactment. Unless this... Yet this is exactly what the Supreme Court did when it granted our circuit courts the authority to toll the speedy trial period in response to the pandemic. The Speedy Trial Act is a due process safeguard. It is not a mere procedural rule implemented to our Supreme Court held that the speedy trial statute is not a technical statute. Rather, its provisions are mandatory and confer a substantial and absolute right upon the defendant under the Constitution. In deciding People v. Ladd, this court observed that the statutory right to a speedy trial is a guarantee by the legislature. Clearly, any delays occasioned or agreed to by defendant do not toll the statutory period. However, this is not the case with Mr. Jones. None of the delays in bringing him to trial were attributed to him. Additionally, the Speedy Trial Act provides several exceptions where the speedy trial period may be tolled. These include delays due to fitness examinations, fitness hearings, and findings of unfitness. They also account for delays in obtaining material evidence where the state has acted with due diligence and there are reasonable grounds to believe that such evidence will in fact be obtained. These are the only exceptions authorized by a valid enactment of the legislature. They are narrow in scope, specific in nature, and are not applicable to Mr. Jones's case. In short, the legislature provided no exception to the statutory right to a speedy trial such as the one occasioned by our Supreme Court's pandemic orders. Furthermore, any argument that equates matters of fitness or evidentiary issues to the type of delay occasioned by the pandemic orders is without merit and serves to contravene the express intent of the legislature as evidenced by the plain language of the act. The general administrative and supervisory authority bestowed upon the court by the Illinois Constitution does not allow the courts to interfere with a constitutional enactment of the legislature. While the COVID-19 pandemic surely made it more difficult to ensure Mr. Jones's statutory speedy trial right, mere difficulty alone does not give the authority the court the authority to toll his statutory speedy trial term at its own discretion. As this as this court noted in People v. Macklin, the faulty operation of judicial administrative machinery is not chargeable to the defendant. Both the people in the courts have the obligation to afford a defendant his statutory rights as well as give him a speedy trial. Our Supreme Court has stated in its decisions that the general administrative and supervisory authority extends only to the adjudication and application of law and the procedural administration of the courts. Further, Illinois Supreme Court Rule 1 provides that its general and civil criminal practice rules govern trial court proceedings except to the extent that the procedure in a particular kind of action is regulated by a statute other than civil practice law. Here, the provisions of the Speedy Trial Act constitute the very sort of proceedings encompassed by the Supreme Court when it limited its own rulemaking authority and noted the primacy of statutory regulation. The Supreme Court's pandemic orders also raise the separation of power issues. In Heinrich v. Libertyville High School, the court held that it is the province of the legislature to enact laws. It is the province of the courts to construe them. Courts have no legislative powers. Courts may not enact or amend statutes. A court cannot restrict or enlarge the meaning of an unambiguous statute. The court went on noting that a court must interpret and apply statutes in the manner in which they are written. A court must not rewrite statutes to make them consistent with a court's idea of orderliness and public policy. The Speedy Trial Act is not a procedural rule implemented to facilitate the operation of the courts. It is a due process safeguard enacted to ensure defendants' rights are protected. As such, the Supreme Court cannot lawfully suspend the operation of the statute on its own without first determining that the statute itself is unconstitutional. In crafting the Speedy Trial Act, our legislator included carefully defined exceptions, none of which permit the Supreme Court to suspend the statutory Speedy Trial right in the event of circumstances not expressly accounted for by the legislature. To argue otherwise is to reduce a defendant's statutory Speedy Trial right to little more than a scheduling concern to be administered according to the pleasures of the court. Our Supreme Court has long held that where the statutory language is plain and certain, it must be given effect by the courts and we cannot legislate but must interpret the law as announced by the legislature. The emergency orders tolling the Speedy Trial period represent an attempt by the judicial branch to rewrite and suspend the operation of a valid, unambiguous, and constitutional legislative enactment. As such, the orders violate the Supreme Court's own well-established conception of the separation of powers and must be found unconstitutional. In the event the Speedy Trial Act requires amendment in order to conform with the evolving needs of public policy, that responsibility plainly lies with the legislature and not the courts. As the first issue raised by Mr. Jones that he is entitled to continuous custody for more than 120 days despite his demand for Speedy Trial, there's no argument as to the duration of his custody. The state conceded that he had been held in custody for in excess of 160 days, due almost entirely to the Supreme Court's emergency pandemic orders. Should this court determine that the emergency pandemic orders were an unconstitutional act by the Supreme Court, the period of time he spent in custody despite his demand for Speedy Trial requires reversal of his charges against him. Therefore, Mr. Jones prays this court find the Illinois Supreme Court exceeded its authority and vacate his conviction. Thank you. Thank you. Just so I'm clear, the first issue regarding the Supreme Court order and whether that was valid to toll it, that's been litigated. People versus Mayfield, our own people versus Weiss, people versus Jones, that has been litigated. The appellate court has found it's been upheld, correct? That is correct. Okay, and the last I checked, there was a PLA in Mayfield. I think that was allowed, but I haven't seen anything else on it. So I think that's still pinning up with the Supreme Court. Is that correct? The PLA was granted. Yes. Okay. So basically, you're hanging your hat, so to speak, on your second unconstitutional argument and the separation of powers issue, correct? Yes, Your Honor. Okay, I just want to be clear for my thoughts here. Justice Vaughn, Justice Welch, do you have any other questions? No questions. Okay, Mr. Taylor. Well, I'll go back. Obviously, Mr. Hanson, you'll have your time for rebuttal. Mr. Taylor, are you ready to proceed? Yes, Your Honors. Then go right ahead. Good morning, Your Honors. Good morning, Counsel. May it please the Court. My name is Ivan O. Taylor, Jr. I'm arguing on behalf of the people for the Illinois State's Attorney's Appellate Prosecutor's Office. People ask this Court to affirm defendant's conviction for burglary as his speedy trial rights were not violated when his trial was held at day 163 of continuous custody because the time, specifically in December and January, was told due to the ongoing COVID-19 pandemic pursuant to the Illinois Supreme Court's order allowing tolling for that safety issue. Your Honors did mention that in Mayfield this particular issue was litigated and the Court there found that the tolling based on the order by the Illinois Supreme Court was valid. There was no violation of the separation of powers and in Mayfield of course there was no violation because it is a procedural, the speedy trial statute, having the trial within that 128 time limit is a procedural issue of which the Illinois Supreme Court has a right to administer and monitor. There was no rewriting of the statute. It merely allowed the courts the ability to toll the time limit in order to ensure not only defendant's safety but the safety of other officers of the court, the justices, and administrative staff. Particularly in this case, the Court stated on the record that there was an outbreak of COVID-19 within the Randolph County Jail where the defendant was stating and even the Defendant's Counsel had to quarantine himself for some time in order to ensure that he was not infected with COVID-19. How the defendant seems to be arguing is that irrespective of whatever is happening within the world, the defendant must be brought to trial and that would indicate that national disasters or other pandemics would be a burden upon individuals who must facilitate defendant's trial. And that can't be what the speedy trial act would allow. It is true that this act itself doesn't specify tolling based upon this particular situation with the COVID-19 pandemic. However, the Illinois Superior Court was within its authority and right to administrate the procedures of the courts. With regards to defense statutory rights, I do believe it was 163 days he was in jail continuously. However, because of the tolling, he was only counted for 101 days at the time his trial was had. It's for these reasons and the reasons specified within the state's brief is also for the reasons utilized by the 2nd District and its ruling in Mayfield that the people believe that the defendant's rights were not violated and that the Illinois Superior Court did not violate the Constitution by allowing the lower courts to toll speedy trial calculations in response to this COVID-19 pandemic. Do you honors have any questions? No questions. Justice Vaughn? Mr. Taylor, the defendant cites Newland v. People, 221 Illinois 166 where the Supreme Court said continuing trial because some of the judges were sick is not sufficient. Do you distinguish that case from the current situation? From the current situation, there's two ways to distinguish that. First, Newland I believe was from 1906 was the year for this. In People v. Glisson in 2002, the Illinois Supreme Court stated that appellate opinions before 1935 have no binding authority on Illinois courts. So that case for how old it was, especially since Newland was also based upon the 1870 Illinois Constitution and not the current 1970 Illinois Constitution, it really has no authority being utilized in this situation. Also for Newland, the type of sickness is vastly different. COVID-19 was a very highly communicable disease which spreads by just mere presence with another individual. I believe in Newland it was the flu, if I remember correctly. But this current disease is much different. It's much more deadly. Even if one is not killed from it, there are long-lasting consequences after one recovers from being sick. So it's a much vastly different situation. Thank you. No other questions. Anything, Justice Welch? No questions. Thank you, Mr. Taylor. Mr. Hanson, any rebuttal? Yes, Your Honor. Opposing counsel? The State's position on the Supreme Court's authority to suspend the statutory right to a speedy trial effectively reduces a valid legislative enactment to nothing more than a matter of scheduling. The State concedes that the Act does not provide for tolling in the manner that our Supreme Court took in this particular circumstance. But to reduce the Act or to characterize the Act as a procedural matter rather than a statutory right does not comport with the language that the Supreme Court and this Court have used to describe the guarantee of a speedy trial as a substantial and important right. To the people of the House, they refer to it as a substantial and absolute right, and this Court has referred to it as a guarantee. These aren't words used to describe the Court's administrative or scheduling issue. These words either mean something or they amount to a little more than judicial hyperbole. The legislature made no provision for the Supreme Court to suspend the statutory speedy trial right in the way it did. There's no exception for public health. Certainly, we do not contest the severity of the impact COVID-19 has and continues to have on both our judiciary and the country as a whole, the world as a whole. However, the remedy here with respect to the statutory speedy trial right lies entirely with the legislature and not with the courts to suggest otherwise ignores a host of precedent where the courts have continually upheld that this right is absolute and must be applied. That's all I have. Thank you. Thank you, Mr. Hanson. Any final questions, Justice Vaughn or Justice Welch? No. Well, thank you, counsel. Obviously, we will take the matter under advisement. We will issue an order in due course, and I believe this concludes our session for this month. This court will stand in recess until July. Thank you, counsel. Have a great day. Thank you, Your Honor. Have a good day.